O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| SYLVIA THOMAS, | ) | Case No. EDCV 07-1346-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Sylvia Thomas seeks judicial review of the Commissioner's denial of her application for Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is **AFFIRMED**.

**I. Facts and Procedural History**

Plaintiff was born on January 30, 1942, (Administrative Record ("AR") 26), and she has a college education (AR 402). Plaintiff's work history includes employment as a substitute teacher, players' club

representative, telemarketer, and tutor. (AR 81.) Plaintiff has not been gainfully employed since June 30, 2005. Plaintiff claims to be disabled due to diabetes mellitus, hearing loss, arthritis in her back, knee problems, neurotic skin disorder, hypertension, and nervousness. (AR 14.)

Plaintiff filed an application for SSDI and SSI benefits on July 6, 2005. (Joint Stipulation ("Joint Stip.") 2.) The Commissioner denied Plaintiff's application on September 28, 2005, (AR 54-59), and again on December 1, 2005, upon reconsideration. (AR 43-48.) After Plaintiff's timely request, Administrative Law Judge ("ALJ") Lowell Fortune held a hearing on March 9, 2007, at which Plaintiff testified and was represented by counsel. (AR 11.) A vocational expert also testified at the hearing.

The ALJ denied Plaintiff's application on May 31, 2007, concluding that Plaintiff was not disabled under the Social Security Act. (AR 17.) The ALJ applied the five-step sequential analysis mandated by the Social Security Regulations[1] in reaching his decision. The ALJ found that Plaintiff had several severe impairments, including an anxiety disorder, depressive disorder, obesity, and osteoarthritis in the lumbar spine and bilateral knees. (AR 13.) The ALJ determined that Plaintiff's hearing loss, diabetes, and hypertension were not severe. (AR 13-14.)

After determining that Plaintiff's severe impairments did not meet or equal any listed impairment, the ALJ found that Plaintiff had the

---

[1] The five steps are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently; sit for six hours out of an eight-hour day; stand or walk for two hours; balance, bend, stoop, and crouch occasionally; and walk on uneven terrain and climb stairs or ramps occasionally; with no crawling or climbing ladders, ropes, or scaffolds and minimal kneeling. (AR 14.) In reaching this decision, the ALJ gave little probative weight to the treating physician's opinion that Plaintiff was unable to work. (AR 16.) The ALJ further found that Plaintiff could return to her past relevant work as a telemarketer and was not disabled as defined by the Social Security Act at any time through the date of the decision. (AR 17).

The Social Security Administration Appeals Council denied Plaintiff's request for review on September 20, 2007, and Plaintiff filed this action on October 11, 2007. (Complaint 1.) Plaintiff alleges that the ALJ erred as follows: (1) by failing to properly consider the side effects of Plaintiff's medication in reaching the disability determination; (2) by improperly rejecting the treating physician's opinion; and (3) by posing an improper hypothetical to the vocational expert who testified at the hearing. (Joint Stip. 2.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. 15.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld if it is "supported by 'substantial evidence' and if the proper legal standard was applied." *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence means such

3

evidence as a reasonable person might accept as adequate to support a conclusion. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

> **A.    The ALJ Properly Considered the Type, Dosage, and Side Effects of Plaintiff's Medications**

Plaintiff contends that the ALJ failed to properly consider the side effects of her medication, namely drowsiness and dizziness, in reaching the disability determination. (Joint Stip. 3.) As evidence of the severity of these side effects, Plaintiff relies on a "Certificate of Disability and/or Return to School/Work" filled out by her treating physician, James Evans, M.D., stating that Plaintiff was unable to work due to the side effects (AR 380), Plaintiff's own testimony at the hearing, and a list of medications Plaintiff allegedly began taking in 2003. (Joint Stip. 3-4.)

In concluding that the side effects did not preclude Plaintiff from working, the ALJ rejected the Certificate of Disability and discounted Plaintiff's testimony as to the severity of her symptoms. (AR 15-16.) The Certificate of Disability, which apparently is a standard form

4

typically used in workers' compensation claims, contained Dr. Evans' brief comments that Plaintiff was "excessively drowsy during day due to side effects of medications. Diagnosis neurodermatitis – unable to hold down employment." (AR 380.) The ALJ evaluated Dr. Evans' opinion as follows:

> [T]his doctor's clinical records ... make no mention in the chart notes of any adverse side effects due to medications, and there is no mention of excessive drowsiness. His expression of disability is a conclusory statement, and he offered no laboratory or clinical findings to support his conclusory statement. The opinion of Dr. Evans is given little probative value.

(AR 16.)

Plaintiff does not contest that Dr. Evans' treatment notes contain no mention of drowsiness, dizziness, or any other side effects Plaintiff experienced from her medications, let alone side effects that rendered her completely unable to work. Instead, Plaintiff states that Dr. Evans "stood nothing to gain from a false assertion," and that "[i]t is unclear for what the ALJ was reaching when he said there was no laboratory or clinical findings to support the statement by Dr. Evans [because the] symptoms do not lend themselves to clinical or laboratory measurements."[2] (Joint Stip. 3-4.)

//

---

[2] Plaintiff misinterprets the ALJ's statement. The ALJ did not say that Plaintiff's subjective symptoms were unsupported by clinical findings, as Plaintiff suggests. Instead, the ALJ noted that Dr. Evans' clinical records say nothing at all of adverse side effects or excessive drowsiness, and that Dr. Evans referenced no laboratory or clinical findings to support his conclusory statement that Plaintiff was unable to work. (AR 16.)

The ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, the ALJ was entitled to compare Dr. Evans' treatment notes to his comments on the disability form, to determine whether Dr. Evans' notes supported his opinion. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Nothing in Plaintiff's medical record, either from Dr. Evans' own treatment notes or otherwise, supports Dr. Evans' opinion that drowsiness and dizziness from medication precluded Plaintiff from performing any work at all. The ALJ made the reasonable inference that if the side effects of Plaintiff's medications were so debilitating as to render her completely disabled, she would probably have mentioned the problem to her doctor at some point. However, except for Dr. Evans' comments on the single form, Plaintiff's records contain no mention whatsoever of side effects from the medication, nor of excessive drowsiness. The ALJ's decision to give this opinion little probative value is supported by substantial evidence in the record.

In addition to rejecting Dr. Evans' opinion, the ALJ also discounted Plaintiff's credibility as to the severity of her alleged impairments and symptoms, concluding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 15.) The ALJ gave several reasons for his finding, all of which are supported by the record, including: (1) that Plaintiff had received no significant recent treatment to address her alleged impairments; (2) that although Plaintiff had prescriptions for psychotropic medication for depression

6

1   and anxiety, she had not pursued outpatient therapy or counseling; (3)
2   that Plaintiff had been noncompliant in taking the prescribed
3   medications; (4) that Plaintiff sought no treatment for chronic pain;
4   (5) that Plaintiff had no back tenderness when examined by the state
5   agency consulting physician; and (6) that the record contained virtually
6   no "hallmark indications of pain such as reflex, sensory, and
7   neurological deficits." (AR 15.)

8       Although Plaintiff focuses her argument here solely on the ALJ's
9   alleged failure to consider the side effects of her medication,
10  Plaintiff had claimed to be disabled based on a number of alleged
11  impairments, including, as noted by the ALJ, diabetes mellitus, hearing
12  loss, arthritis in her back, knee problems, neurotic skin disorder,
13  hypertension, and nervousness. (AR 15.) Further, when the ALJ questioned
14  Plaintiff at the hearing as to why she was unable to work, Plaintiff
15  complained not only of drowsiness and dizziness, but also of "slight
16  blackouts," a "little going to the bathroom problem," and an inability
17  to tolerate people chewing gum around her. (AR 406-09.) Plaintiff cannot
18  prevail by picking one symptom out of a plethora of claimed impairments
19  and symptoms and asserting that the ALJ failed to adequately address
20  that one symptom.

21      The ALJ was not convinced by Plaintiff's statements regarding the
22  severity of her symptoms, including the side effects from medication,
23  and he gave clear and convincing reasons for discounting her credibility
24  that are supported by substantial evidence in the record. *See Orn v.*
25  *Astrue*, 495 F.3d 625, 635-36 (9th Cir. 2007)(noting that ALJ must
26  provide clear and convincing reasons for rejecting symptom testimony
27  after medical impairment established)(citations omitted); *Robbins v.*
28  *Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). The Court

7

concludes that the ALJ adequately considered the alleged side effects from Plaintiff's medications.

### B.   The ALJ Properly Considered the Treating Physician's Opinion Regarding Plaintiff's Disability

Plaintiff asserts that the ALJ improperly dismissed the treating physician's opinion that Plaintiff's neurodermatitis[3] prevented her from working. (Joint Stip. 7-9, 11.) As noted above, Dr. Evans commented that Plaintiff was "excessively drowsy during day due to side effects of medication. Diagnosis neurodermatitis - unable to hold down employment." (AR 380.) It is unclear from this brief comment or the record whether the side effects of Plaintiff's medications, her neurodermatitis, or both led Dr. Evans to the conclusion that Plaintiff was "unable to hold down employment." (AR 380.) The Court will assume that he meant both and will address the issue accordingly.

The record contains Plaintiff's fairly extensive medical records, but the only document from any treating physician addressing Plaintiff's claimed limitations is the short note from Dr. Evans discussed above. The record does reveal that Plaintiff has received treatment for numerous ailments in recent years, including a skin condition that required various topical ointments and special shampoos. (Joint Stip. 8.) None of the treatment notes reflect the severity of the condition

---

[3]   Neurodermatitis involves a "cycle of chronic itching and scratching," which "can cause the affected skin to become thick and leathery." Mayo Clinic, http://www.mayoclinic.com/health/neurodermatitis/DS00712. Plaintiff's medical records also suggest Plaintiff may suffer from neurotic excoriation, which has been defined as "self-inflicted skin lesions produced by repetitive scratching [that] is a physical manifestation of an emotional problem." Peggy R. Cyr & George K. Dreher, *Neurotic Excoriations*, American Family Physician, December 15, 2001, *available at* http://www.aafp.org/afp/20011215/1981.html.

that Plaintiff is now claiming,[4] nor do they support Plaintiff's claims of disability due to the condition. The treatment notes reflect routine care of a chronic skin condition managed with medication, as opposed to a debilitating disorder that prevented Plaintiff from undertaking any activity, including work.

Plaintiff also failed to suggest to the state agency physicians that her skin condition, in and of itself, was disabling. An examining physician, Bunsri T. Sophon, M.D., indicated that Plaintiff's chief complaints were low back pain and bilateral knee pain. (AR 312.) Plaintiff also informed Dr. Sophon during the examination that she had high blood pressure, diabetes, and "dermatitis involving the scalp." (AR 313.) Dr. Sophon's report contains no mention of a debilitating skin disorder or that Plaintiff had any difficulty sitting. A reviewing

---

[4] Plaintiff argues that "[t]he record reflects not only a scalp condition, but also that a significant aspect of this condition is localized around Plaintiff's anus and vagina, is recurrent, difficult to treat successfully, and has resulted in infections and pustules." (Joint Stip. 11.) Although Plaintiff' medical record shows that she has been treated for seborrheic dermatitis (dandruff), neurodermatitis, as well as yeast infections, bladder infections, and bacterial vaginosis, none of the treatment notes of any doctor indicate that there is a connection between Plaintiff's skin condition and her frequent vaginal infections. It does appear that the skin condition itself did occasionally arise in Plaintiff's vaginal area, but the vast majority of Plaintiff's complaints, as documented in the record, centered on these unrelated infections. Further, no physician's treatment notes suggest that either the infections or the skin condition might render Plaintiff unable to work or otherwise disable her.

Plaintiff further contends, "It is doubtful Defendant would maintain his assertion this condition is not 'severe' if he were so afflicted and expected to sit six hours out of an eight hour day." (Joint Stip. 11.) It appears from this statement that Plaintiff now claims her skin condition prevents her from sitting for long periods of time. Even if Plaintiff's skin condition did cause her significant discomfort when sitting, Plaintiff failed to bring it to the attention of her treating physicians, the examining physicians, or the ALJ. Plaintiff bears the burden of establishing her inability to work. 20 C.F.R. § 404.1512. Plaintiff cannot claim for the first time in this Court that she is limited in her ability to sit, as she failed to present the issue to the ALJ.

physician, A. Lizarraras, M.D., noted, "The medical evidence is consistent and documents many physical problems but none that individually or in combination preclude work for a twelve month period." (AR 337.)

An examining psychiatrist, Linda M. Smith, M.D., noted that Plaintiff's chief complaint was nervousness. (AR 319, 323.) Plaintiff reported to Dr. Smith that she had diabetes, hypertension, chronic pain, and chronic skin infections that were caused by her nervousness.[5] (AR 320.) Dr. Smith diagnosed Plaintiff with anxiety and depressive disorders and concluded that Plaintiff was mildly limited in several respects, such as concentration and ability to interact with coworkers. (AR 324.) Dr. Smith noted that Plaintiff scratched frequently during the interview, but it is clear that Plaintiff did not convey to Dr. Smith the alleged severity of her skin condition. A reviewing psychiatrist, K. Gregg, M.D., did not even mention a neurotic skin disorder in reaching his conclusion that Plaintiff had a non-severe anxiety disorder, presumably because Plaintiff's medical records only lightly touch on the issue, and she did not emphasize it in applying for SSI and SSDI benefits. (AR 344.)

The ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

---

[5]  Plaintiff also claimed to periodically experience auditory and visual hallucinations. (AR 320.) Dr. Smith noted that Plaintiff was "mostly genuine and truthful ... except when she was attempting to claim hallucinations, which really wasn't very credible." (AR 322.)

1  1996). As discussed above, however, the ALJ need not accept the opinion

2  of any medical source, including a treating medical source, "if that

3  opinion is brief, conclusory, and inadequately supported by clinical

4  findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord*

5  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

6       As discussed above, the ALJ assigned minimal probative value to Dr.

7  Evans' opinion that Plaintiff was unable to work and relied instead on

8  the examining and reviewing physicians' and psychiatrists' opinions that

9  Plaintiff was only mildly functionally limited. (AR 16-17.) The ALJ

10 rejected Dr. Evans' opinion, stating that "[h]is expression of

11 disability is a conclusory statement, and he offered no laboratory or

12 clinical findings to support his conclusory statement." (AR 16.) Given

13 the complete absence of any support in the record for Dr. Evans' comment

14 that Plaintiff was unable to work due to her skin condition, the Court

15 concludes that substantial evidence supports the ALJ's decision to

16 reject Dr. Evans' opinion in favor of the examining physicians'

17 opinions. No relief is warranted on this issue.

18       **C.   The ALJ Posed a Proper Hypothetical to the Vocational Expert**

19       Plaintiff contends that the ALJ's hypothetical to the vocational

20 expert improperly omitted reference to the side effects Plaintiff

21 allegedly experienced from her medication and the "distraction and

22 discomfort" of her skin condition. (Joint Stip. 12.) The ALJ posed the

23 following hypothetical to the vocational expert at the hearing, adopting

24 the limitations from the examining and reviewing physicians' and

25 psychiatrists' reports as discussed above:

26       I am going to ask you hypothetical questions, and for both

27       please assume an individual the same age, education and work

28       experience as the Claimant, and in addition for the first

11

question assume a residual functional capacity for a full range of light exertional work, except as I say otherwise as follows, and that would include posturals. This person is occasionally able to climb ramps and stairs but is not able to climb ladders, scaffolds or ropes; the person is occasionally able to balance, bend, stoop, crouch; this person is able to kneel but less than occasionally; is not able to crawl; is able to walk on uneven terrain but only occasionally for up to a third of the day; this person - mentally this person should not perform any work requiring hyper vigilance or responsibility for the safety of others and should not perform work involving safety operations.

(AR 420-21.) The vocational expert testified that a person with these limitations could not perform past relevant work as a teacher, but could perform past relevant work as a tutor, casino representative, or telemarketer. (AR 421-22.) The ALJ then asked if these jobs would still be available to a person who could only stand or walk for two hours out of an eight-hour day. (AR 422.) The vocational expert responded that only the telemarketer position would continue to be a viable option under such circumstances.[6] (*Id.*) The ALJ relied on the vocational expert's testimony in concluding that Plaintiff "could perform her past relevant work as a telephone solicitor as it is actually and generally performed" and was not disabled. (AR 17.)

---

[6]  The ALJ also posed a third hypothetical to the vocational expert, adding that the person would be "off task" twenty percent of the time. (AR 422.) The vocational expert testified that no jobs existed in the national economy for such a person. (*Id.*) Although Plaintiff argues that the ALJ failed to include the "distraction and discomfort" of the skin condition in the hypotheticals, she does not mention this third hypothetical in the briefing. Accordingly, the Court will assume that Plaintiff did not find the third hypothetical to be relevant to her arguments and will not address the issue further.

A hypothetical posed to a vocational expert must contain all the limitations of a particular claimant. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)(citations omitted). If the hypothetical fails to reflect all of the claimant's limitations, the vocational expert's testimony cannot support a finding that the claimant could perform jobs in the national economy. *See id.* However, the ALJ need only include in the hypothetical those limitations that are supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Having properly rejected Dr. Evans' opinion as to Plaintiff's ability to work and Plaintiff's claimed symptoms, the ALJ appropriately omitted reference to Plaintiff's alleged side effects or skin condition. *See id.*

The Court concludes that the ALJ posed an appropriate hypothetical to the vocational expert, containing all of Plaintiff's limitations as recommended by the examining and reviewing physicians and adopted by the ALJ. The ALJ properly relied on the vocational expert's opinion, and the decision is supported by substantial evidence in the record.

**IV.   Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

DATED: August 13, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge